UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAKEWOOD GROUP LLC,<br>                              Plaintiff,<br>v.<br>INNOFONE.COM, INC. and ALEX LIGHTMAN,<br>                              Defendants. | Docket No. 08-cv-03550 AKH(KNF)<br><br>ELECTRONICALLY FILED<br><br>**ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT** |
| INNOFONE.COM, INC. and ALEX LIGHTMAN,<br>                              Counterclaimants,<br>v.<br>LAKEWOOD GROUP LLC,<br>                              Counterdefendant. | |
| INNOFONE.COM, INC. and ALEX LIGHTMAN,<br>                              Third-Party Plaintiffs,<br>v.<br>PLATINUM PARTNERS and MARK MUELLER,<br>                              Third-Party Defendants. | |

Defendants, Counterclaimants and Third-Party Plaintiffs Innofone.com Incorporated and Alex Lightman (collectively, "Innofone"), by their counsel, Pavia & Harcourt LLP, respectfully submit the following Answer to the Complaint filed by Plaintiff Lakewood Group LLC ("Lakewood"), counterclaims against Lakewood, and Third-Party claims against Platinum Partners ("Platinum") and Mark Mueller ("Mueller").

## **ANSWER**

1.     Denies the allegations of paragraph 1, except admits, upon information and belief, that Lakewood is a Delaware limited liability company, and that Lakewood claims it is alleging causes of action for breach of contract and breach of a personal guarantee against Innofone in this action.

2. Upon information and belief, admits the allegations in paragraph 2.

3. Admits the allegations of paragraph 3.

4. Admits the allegations of paragraph 4.

5. Paragraph 5 asserts a legal conclusion and therefore no response is required.

6. Paragraph 6 asserts a legal conclusion and therefore no response is required.

7. Denies the allegations of paragraph 7, except to the extent that paragraph 7 seeks to summarize the terms of the Subscription Agreement, Note and Guarantee, Innofone respectfully refers to those documents for their contents.

8. Denies the allegations of paragraph 8, except admits that on or about January 17, 2007, Innofone entered into a subscription agreement with Lakewood Agreement (the "Subscription Agreement"), and to the extent that paragraph 8 seeks to summarize the terms of that agreement, Innofone respectfully refers to the terms of the Subscription Agreement for its content.

9. Denies the allegations of paragraph 9, except admits that on or about July 11, 2007, Lakewood filed an action against Innofone (the "2007 Action"), that the 2007 Action was settled pursuant to a settlement agreement (the "2007 Settlement Agreement"), and to the extent that paragraph 9 seeks to summarize the terms of the complaint filed in the 2007 Action or the 2007 Settlement Agreement, Innofone respectfully refers to those documents for their contents.

10. Denies the allegations of paragraph 10, except admits Innofone granted a note in Lakewood's favor on or about January 17, 2007 (the "Note"), and to the extent that paragraph 10 seeks to summarize the terms of the Note, Innofone respectfully refers to the Note for its content.

11. Denies the allegations of paragraph 11, except to the extent that paragraph 11 seeks to summarize the terms of the Note, Innofone respectfully refers to the Note for its content.

12. Denies the allegations of paragraph 12, except to the extent that paragraph 12 seeks to summarize the terms of the Note, Innofone respectfully refers to the Note for its content.

13. Denies the allegations of paragraph 13, except to the extent that paragraph 13 seeks to summarize the terms of the Subscription Agreement, Innofone respectfully refers to the Subscription Agreement for its content.

14. Denies the allegations of paragraph 14.

15. Denies the allegations of paragraphs 15, except admits that at various times, Lakewood has requested payment.

16. Denies the allegations of paragraph 16.

17. Innofone repeats and re-alleges paragraphs 1 through 16 of this Answer.

18. Denies the allegations of paragraph 18.

19. Denies the allegations of paragraph 19.

20. Denies the allegations of paragraph 20.

21. Innofone repeats and re-alleges paragraphs 1 through 20 of this Answer.

22. Denies the allegations of paragraph 22.

23. Denies the allegations of paragraph 23.

24. Denies the allegations of paragraph 24.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint should be dismissed on the grounds of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

The Complaint should be dismissed on the grounds of waiver, estoppel and laches.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed in whole or in part due to Lakewood's failure to mitigate damages and protect itself from avoidable damages by, among other things, its failure to sell the collateral at a time when its value exceeded the amount owed under the loan documents.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed in whole or in part due to the usurious nature of the loan.

### RESERVATION OF DEFENSES

Innofone reserves the right to assert additional defenses, whether affirmative or otherwise, about which it presently lacks knowledge or information but which may become available to it during the course of this litigation.

**WHEREFORE**, Defendants and Counterclaimants Innofone and Lightman respectfully request the following relief:

   A.   Dismissal of the complaint, with prejudice;

   B.   Costs of defense, including reasonable attorneys' fees; and

   C.   Such other and further relief as this Court deems just and proper.

### COUNTERCLAIMANTS AND THIRD-PARTY PLAINTIFFS INNOFONE AND LIGHTMAN'S COUNTERCLAIMS AND THIRD-PARTY CLAIMS AGAINST LAKEWOOD GROUP, INC., PLATINUM PARTNERS AND MARK MUELLER

   1.   Counterclaimants and Third-Party Plaintiffs Innofone.com Inc. ("Innofone") and Alex Lightman ("Lightman") bring this counterclaim for breach of contract and fraud against Lakewood Group, Inc. ("Lakewood" or the "Counterclaim Defendant"), and third-party claims

P&H - 571417.4 :15027/100                -4-

for fraud against Platinum Partners ("Platinum") and Mark Mueller ("Mueller") (collectively, the "Third-Party Defendants").

2.  In late 2006, Lakewood and Platinum, through their joint principal Mark Mueller ("Mueller"), fraudulently induced Lightman to buy-back $750,000 of Innofone's stock. Counterclaim Defendant and Third-Party Defendants claimed that upon such purchase, Platinum would provide Innofone with much needed capital on terms previously agreed upon with Innofone, and would provide additional financing in the future. However, at the time they made this representation, the Counterclaim Defendant and Third-Party Defendants knew that Platinum would not provide Innofone with such capital pursuant to the terms agreed to by the parties, and would also renege on their promise for future financing, so as to prey on Innofone's precarious financial position and thereby force Innofone to accept terms that were much more disadvantageous. As a result of Lightman's and Innofone's justifiable reliance upon the representations by the Counterclaim Defendant and Third-Party Defendants, Lightman and Innofone suffered damages to be determined at trial.

## THE PARTIES

3.  Counterclaimant Innofone is a Nevada corporation with its principal place of business in California.

4.  Counterclaim Defendant Lakewood Group LLC is a limited liability corporation organized under the laws of Delaware, with its principal place of business in New York, New York.

5.  Third-Party Defendant Platinum Partners is, upon information and belief, a corporation organized under the laws of New York, with its principal place of business in New York.

6.  Third-Party Defendant Mark Mueller is an individual who, upon information and belief, resides in New York.

## JURISDICTION AND VENUE

7.  Jurisdiction is present in this Court pursuant to 28 U.S.C. § 1332, in that there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, and 28 U.S.C. § 1367, because these claims are pendent to the claims asserted by Lakewood against Innofone and Lightman.

8.  Venue is proper in this district pursuant to 28 U.S.C. 1391.

## FACTUAL ALLEGATIONS

9.  Innofone is the first publicly traded company to focus exclusively on Internet Protocol version 6 ("IPv6"). As an early entrant in IPv6, Innofone derived revenue from sponsorships, attendee fees, training, consulting, and mobile software for applications such as messaging and alerts. Part of Innofone's strategic business goal was to acquire businesses engaged in IPv6 technology development and products manufacturing to expand its IPv6 business. As a result, Innofone's survival and growth depended upon obtaining outside capital sufficient to meet those business goals because Innofone spent more than it earned to create and acquire products in anticipation of the emerging market for IPv6.

10. In the fourth quarter of 2006, Innofone was introduced to the Counterclaim and Third-Party Defendants. At that time, the Counterclaim and Third-Party Defendants expressed interest in causing Platinum to make an $800,000 loan to Innofone.

11. The Counterclaim and Third-Party Defendants knew that this loan was critical to Innofone's survival because Innofone's principal, Alex Lightman, had numerous discussions with Mark Mueller, a principal of both Platinum and Lakewood, in which Lightman explained

Innofone's urgent need for capital.

12. In or about September 2006, the parties agreed upon terms for Platinum to loan $800,000 to Innofone (the "September 2006 Terms"). The September 2006 Terms were memorialized in a term sheet.

13. As a condition to the loan, the Counterclaim Defendants demanded that Lightman buy-back shares of Innofone stock.

14. Based upon the Counterclaim and Third-Party Defendants' representations that Platinum would provide Innofone with the $800,000 in financing upon the September 2006 Terms immediately after Lightman acquired the Innofone shares, Lightman borrowed $750,000 to purchase the necessary Innofone shares.

15. As further inducement for Lightman to acquire the Innofone shares, the Counterclaim and Third-Party Defendants promised Innofone subsequent equity financing.

16. Lightman acquired the necessary Innofone shares, but the Counterclaim and Third-Party Defendants stalled. They knew that as time passed, Innofone's financial condition would become dire. They also knew that after Lightman acquired the additional Innofone shares, Innofone and Lightman would be desperate for financing.

17. In January 2007, Platinum reneged on the earlier promise to provide Innofone with the $800,000 pursuant to the September 2006 Terms.

18. Recognizing that Innofone and Lightman were in desperate need for capital, the Counterclaim and Third-Party Defendants stated that Platinum would make the $800,000 loan, but only if Innofone and Lightman agreed to additional terms, including that: (1) Innofone give Platinum 750,000 shares as a due diligence fee; (2) Lightman provide a personal guarantee for the loan; and (3) Lightman pledge 5 million shares of stock as collateral.

19. With no alternative, on or about January 17, 2007, Innofone agreed to the newly-negotiated loan terms (the "January 17 Transaction").

20. Lightman was forced to publicly report the 750,000-share due diligence fee as a sale to Platinum at a price of one penny per share. Because Lightman, the CEO of Innofone, publicly reported a sale of his stock to Platinum at a penny per share, there was an appearance that the company had become worthless. As is often the case on Wall Street, appearance became reality, and Innofone's shares plummeted in the subsequent market panic.

21. Innofone's shares currently trade at 0.0004 of a penny per share, and the company has lost approximately $30 million in market capital since the sale of the 750,000 shares to Platinum.

22. After the closing of the January 17 Transaction, the Counterclaim and Third-Party Defendants reneged on their agreement to provide Innofone with additional financing. This conduct further damaged Innofone.

## CAUSES OF ACTION

## BREACH OF CONTRACT

23. Counterclaimants repeat and re-allege paragraphs 1-22 as if fully set forth herein.

24. Innofone and Platinum entered into an agreement pursuant to which Platinum would provide $800,000 in financing to Innofone upon the September 2006 Terms.

25. Innofone and Lightman satisfied all of their obligations required under this agreement.

26. Platinum refused to honor the terms previously agreed upon, and breached the agreement.

27. As a direct and proximate result of the conduct of Platinum, Innofone and

Lightman have been damaged in amount to be proven at trial.

## COUNT TWO

## FRAUD

28. Counterclaimants repeat and re-allege paragraphs 1-27 as if fully set forth herein.

29. As set forth above, the Counterclaim Defendants promised Innofone and Lightman that upon Lightman's purchase certain shares of Innofone stock, Platinum would provide $800,000 in financing to Innofone according to the previously agreed-upon September 2006 Terms.

30. Innofone and Lightman reasonably and justifiably relied upon the foregoing representation.

31. At the time that they made such representation, however, Counterclaim and Third-Party Defendants knew that this promise to provide $800,000 in financing was false because after Lightman purchased the Innofone shares, Platinum refused to lend Innofone the $800,000 upon the September 2006 Terms. Instead, Counterclaim and Third-Party Defendants used Innofone's and Lightman's weakened economic position to force them to agree to terms much more favorable to the Counterclaim and Third-Party Defendants than the terms to which they had already agreed.

32. The Counterclaim and Third-Party Defendants refused to lend the $800,000 upon the September 2006 Terms, and instead lent the money pursuant to terms entered into on or about January 17, 2007 (the "January 2007 Terms").

33. The January 2007 Terms were far more onerous to Innofone and Lightman (and far more favorable to the Counterclaim and Third-Party Defendants) than the September 2006 Terms.

34. As a direct and proximate result of Innofone's and Lightman's reasonable reliance upon the knowingly false statements made by the Counterclaim and Third-Party Defendants, Innofone and Lightman have been damaged in an amount to be determined at trial.

**WHEREFORE,** Counterclaimants and Third-Party Plaintiffs Innofone.com Inc. and Alex Lightman respectfully request the following relief:

A. Dismissal of the lawsuit brought by Lakewood, with prejudice;

B. Judgment on the counterclaims and third-party claims, and an award of money damages to be determined at trial;

C. Punitive damages against the Counterclaim and Third-Party Defendants for their fraudulent conduct;

D. Pre- and post-judgment interest;

E. Reasonable costs of defending against the complaint and costs of suit regarding the prosecution of the counterclaims and third-party claims, including, but not limited to, reasonable attorneys' fees; and,

F. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 4, 2008

PAVIA & HARCOURT LLP

/s/ Adam D. Mitzner
Adam D. Mitzner (AM-8325)
Jonathan A. Selva (JS-2006)

600 Madison Avenue
New York, New York 10022
(212) 508-2318
(212) 980-3150 (facsimile)
amitzner/jselva@pavialaw.com

Counsel to Defendants, Counterclaimants and
Third-Party Plaintiffs Innofone.com Incorporated
and Alex Lightman